**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

LACOSTE ALLIGATOR, S.A.

     Plaintiff

        v.                          Civ. No. 05-2259 (PG)

RODOLFO SULIA SANTIAGO D/B/A AILUS CORP., ET AL.

     Defendants

---

**PRELIMINARY INJUNCTION**

Plaintiff LACOSTE ALLIGATOR S.A. ("LACOSTE"), a Swiss Corporation, brought this action against the individual Defendants named above for the infringement of its trademark rights in the LACOSTE name and the LACOSTE logo (the LACOSTE MARKS), trademark counterfeiting, false designation of origin, unfair competition, injunctive relief and damages. On December 6, 2005 the Court granted an ex-parte Temporary Restraining Order (TRO) and ordered defendants to show cause why preliminary injunctive relief should not be granted.

On December 15, 2005, the Court held the preliminary injunction hearing. In all, sixteen defendants came before the Court and gave their voluntary consent to the entry of a preliminary injunction.

One additional defendant, Mr. Hector Mercer Guerrero d/b/a Eau de Par Fum, was properly served and noticed with the Court's Order to show cause. Defendant Mercer appeared pro-se and asked for time to retain legal representation. The Court extended the Temporary Restraining Order for ten (10) additional days as to defendant Mercer and gave him time to retain legal representation and to inform Plaintiff if he would consent to the entry of a preliminary injunction.

On January 24, 2006, a Status Conference was held before the Court and Defendant Hector Mercer d/b/a Eau De Par Fum appeared represented by counsel and advised the Court that he would challenge LACOSTE's request for a Preliminary Injunction. As a result, the Court scheduled an Evidentiary

Civ. No. 05-2259(PG)                                                    Page 2

Hearing for January 31, 2006, to determine if the Preliminary Injunction
would be entered against Defendant Mercer.

On January 31, 2006, Defendant Hector Mercer d/b/a Eau de Par Fum
("Mercer') answered the complaint denying most allegations and contending
that he did not knowingly manufacture, distribute, sell or offered for sale
goods with counterfeit copies of the LACOSTE Marks. Mercer further argued
that a Preliminary Injunction should not be issued, because LACOSTE had
failed to show irreparable damage. [Docket No. 39]

The Court heard testimony from Mr. Jose F. Marrero, Plaintiff's lead
investigator, and from Mr. Roberto Morales, one of Marrero's investigators.
Mercer cross-examined both witnesses and also testified.

On the basis of all the evidence that came before the Court, including
affidavits and memorandum in support of LACOSTE's motion for a preliminary
injunction, the Court finds as follows:

1.    LACOSTE Alligator, S.A. is the owner of a number of federal
trademark registrations for the LACOSTE name and the LACOSTE
logo, popularly known as the "LACOSTE alligator" or "LACOSTE
crocodile" (collectively the LACOSTE Marks). All such
registrations are valid, existing and enforceable.

2.    Plaintiff also owns a number of trademark registrations in
Puerto Rico for the mark LACOSTE. All such registrations are
valid, existing and enforceable.

3.    The LACOSTE Marks have become famous and well-known all
over the world.

4.    In Puerto Rico genuine LACOSTE branded products are
available for sale at the LACOSTE Boutique in Plaza Las
Americas, Macy's Department Store and Clubman. These are the
only stores authorized to sell LACOSTE branded products.

5.    On or about November, 2005, Plaintiff asked Jose Marrero,
a private investigator that specializes in trademark counterfeit
matters, to investigate the sale of LACOSTE fake products in
Puerto Rico. Among various venues, Mr. Marrero investigated a
flea market known as Pulguero Navideño del Bayú, adjacent to the
Hiram Bithorn Stadium, San Juan, Puerto Rico.

6.    Mr. Marrero ordered Mr. Roberto Morales to do the
investigation. On November 17, 2005, Mr.  Morales went to the
Bayú flea market where he met defendant Hector Mercer operating
a sales booth. Mr. Morales saw that defendant carried a
significant amount of merchandise with the LACOSTE Marks,
including perfumes and baseball caps.

7.    Mr. Mercer sold Mr. Morales six (6) hats with the LACOSTE

Mark, at $6.00 each, for a total of $36.00. Mr. Mercer gave Mr. Morales a business card with his name, the name of his business, Eau De Par Fum, and the LACOSTE Mark and logo. Defendant further told Mr. Morales that he had additional LACOSTE merchandise, available at his stores.

8.   On November 19, 2005, Mr. Morales met again defendant Mercer at his store location on Borinquen Avenue. There defendant sold Morales another hat with the LACOSTE Mark for $6.00.

9.   Mr. Marrero examined all seven hats that Morales purchased from defendant and concluded they were all counterfeits.

10.   On December 13, 2005, Mr. Morales served Defendant Mercer with the complaint and summons in this case at his store on Borinquen Avenue. Morales saw there a significant amount of LACOSTE branded hats. Mr. Morales asked defendant to voluntarily surrender the inventory of faked goods. A physical count, netted 45 counterfeit items; however, defendant refused to surrender the goods.

11.   At the hearing, Mr. Marrero explained at length the basis why the goods defendant sold are all counterfeit. In short, he pointed to the Court the overall poor quality, shoddy stitching and labeling never found in authentic LACOSTE products.

12.   The Court notes that the poor quality of the hats defendant Mercer sold is clear and obvious.

13.   Based on the foregoing, the Court finds that the hats purchased by Mr. Morales from Defendant Mercer are counterfeit.

14.   At the hearing Defendant admitted he is not an authorized LACOSTE retailer and claimed that he purchased the hats for personal use. The Court finds defendant's testimony simply not credible. It is plainly unfathomable to claim that goods in display at his store were for personal use, when in fact he sold such goods to Mr. Morales on two separate occasions.

15.   Moreover, defendant advertises at www.guame.com, an internet site, offering fashion merchandise and displaying the LACOSTE Mark, the alligator logo and the name of Eau de Par Fum. The telephone numbers and business name at that site match those of defendant Mercer. Hence, defendant is actively engaged in the sale of counterfeit LACOSTE products.

16.   The Court finds that there is more than enough evidence to warrant the preliminary injunction.

## DISCUSSION

### A. The Standard for a Preliminary Injunction

The standard for granting a preliminary injunction is well-known. The First Circuit uses a quadripartite test for determining whether litigants

are entitled to preliminary injunction redress. Under this framework, trial courts must consider (1) the likelihood of plaintiff's success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant imposition, i.e. the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect the court's ruling will have on the public interest. See Borinquen Biscuit Corp. v. M.V. Trading Corp., No. 05-2591, 2006 WL 852365, *2 (1 st Cir. April 4, 2006); Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F. 3d 12, 15 (1st. Cir. 1996) (citing Weaver v. Henderson, 984 F. 2d 11, 12 (1st. Cir. 1993) and Hyperthem, Inc. v. Precision Products, Inc., 832 F. 2d. 697 (1987). See also Narragansett Indian Tribe, v. Guilbert, 934 F. 2d 4, 5-6 (1st Cir. 1991); Geoffrey, Inc. v. Toys 'R Us (Nosotros somos los juguetes), Inc., 756 F.Supp. 661, 664-65 (D.P.R. 1991); Doral Pharmamedics, Inc. v. Pharmaceutical Generic Developers, Inc., 148 F. Supp. 2d 127 (2001).

   At the preliminary injunction stage, a trial court need not predict the eventual outcome of the case with absolute assurance, but rather make a statement as to the probable outcome. See Ross-Simmons of Warwick, Inc. v. Baccarat, 102 F. 3d at 16.

   In the First Circuit, the probability of success component is regarded "as critical in determining the propriety of injunctive relief." Lancor v. Lebanon Hous. Auth., 760 F. 2d, 361, 362 (1985). This is especially true in trademark cases, in which "the key issue is the likelihood of success on the merits because the other decisions will flow from that ruling." Keds Corp. v. Renne Int'l Trading Corp., 888 F. 2d 215, 220 (1st Cir. 1989); See Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611-12 (1st. Cir. 1988).

## 1.  The Likelihood of Success

   Likelihood of success is the main bearing wall of the four-factor frame work. See Weaver, 984 F. 2d at 12; Auburn News Co. v. Providence Journal Co., 659 F. 2d 273, 277 (1st Cir. 1981). Considering defendant's lack of credibility, the Court can only conclude that defendant's adoption

of the LACOSTE Mark for his hats can only be explained as a deliberate attempt to benefit and cash on the good will and on the strength of the reputation that attaches to its fame. A review of the record leads the Court to conclude that the LACOSTE Marks are distinctive and famous and that Plaintiff owns numerous U.S. trademark registrations to protect them. Moreover, defendant adopted the LACOSTE Mark without leave from LACOSTE. To the extent that likelihood of confusion is the key test in any trademark infringement case, defendant's unauthorized use of the LACOSTE Mark to brand his hats establishes the existence of a likelihood of confusion among potential consumers as to the source, origin and sponsorship of defendant's goods. Therefore, plaintiff has demonstrated that it has superior rights over the LACOSTE marks and that it will probably succeed on the merits of this case. See also Telerep Caribe, Inc. v. Zambrano, 146 F. Supp. 2d 134 (D.P.R. 2001).

### 2.  Immediate Irreparable Harm

Because plaintiff's marks are well-known and well-advertised, the plaintiff has created a significant goodwill in these marks. Consequently, it has a great interest in ensuring that the goods associated with the LACOSTE marks maintain its well-established reputation.

A finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears. See Geoffrey, Inc., 756 F. Supp. 661. The greater the likelihood of success on the merits, the less required showing of irreparable harm. When the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive injunction relief. E.E.O.C. v. Astra U.S.A.,Inc., 94 F. 3d 738, 743 (1st Cir. 1996), as cited in  Telerep Caribe, Inc., 146 F. Supp. 2d 134. This injury arises by depriving plaintiff of the ability to control the nature and quality of a product which the public believes it provides. Thus, plaintiff has a significant stake in continuing to insure that the products identified by the LACOSTE marks maintain these standards. See also Perfumanía, Inc. v. Perfulandia, Inc., 279 F. Supp. 2d 86, 103-104 (D.P.R. 2003) ("By its very

nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill and reputation cannot be satisfactorily quantified.") Assuming that defendant matched the high quality of plaintiff's products, and the contrary appears to be true, plaintiff is still entitled to have its reputation within its control. In this case, an even more serious harm is the damage which will be done to the marks themselves, to plaintiff's goodwill, an intangible value which can never accurately be ascertained. The Court recognizes the persistent and threatened impairment to the strength of plaintiff's marks and to its interest in having exclusive control over the symbol of its own reputation. See Rand, Ltd. V. Lazoff Bros., Inc., 537 F. Supp. 587(D.P.R. 1982).

In essence, the injury to the plaintiff in this case arises from its inability to control the nature and the quality of the products associated with the LACOSTE marks that the purchasing public believes the plaintiff is providing. The harm is irreparable because defendant's use of plaintiff's marks places plaintiff's reputation and goodwill beyond its control. See also McNeil-PPC, Inc. v. Merisant Company, Civil No. 04-1090, 2004 WL 3316380 (D.P.R. July 29, 2004.)

In short then, if a preliminary injunction is not issued, plaintiff's reputation will be adversely affected, and consumers will continue to believe that defendant's goods sold under the LACOSTE Marks are sponsored or approved by the plaintiff. Consequently, the Court concludes that an irreparable harm exists.

### 3. The Balance of Hardship

This Court also considered the possibility of harm to defendant from the issuance of a preliminary injunction. Nevertheless, defendant's predicament is the result of its own conduct. Any loss in trade to the defendant is due only to the fact that defendant will no longer be using confusion to trade on the goodwill and reputation of the plaintiff. Plaintiff, as owner of the LACOSTE Marks, has no control over defendant's sale of faked merchandise. As if it were not enough, the resultant damage, including lost sales of other LACOSTE branded items, alienation of future

customers, and harm to its reputation, undoubtedly, causes damage to LACOSTE. See also Lazoff Bros., Inc., 537 F. Supp. 587.

The injunctive relief sought by the plaintiff will not close down defendant's business. It will merely require that defendant be enjoined from selling, displaying or offering for sale goods with counterfeit copies of the LACOSTE Marks. Hence, plaintiff's interest in preventing the potential injury it would suffer in the future outweighs the inconvenience defendant would experience if plaintiff's request for injunctive relief is granted. See also Geoffrey, Inc., 756 F.Supp. at 664-65.

In addition, defendant began to use the plaintiff's marks after the plaintiff had used and registered its marks in commerce, so that the defendant should not be able to trade on the reputation and goodwill that the plaintiff has invested in and maintained. Therefore, the Court concludes that the balance of hardship tips in favor of the plaintiff, which has built the reputation and goodwill of the LACOSTE name at great expense and has much to lose if the quality of the goods and services associated with that name were compromised. Failure to restrain the defendant from the use of plaintiff's well-established marks will create a loss of trade and customer goodwill which plaintiff has strived to build. See also Lazoff Bros., Inc., 537 F. Supp. 587.

### 4. The Public Interest

There is a strong public interest in preventing consumer confusion caused by a misappropriated trademark or trade dress. As the U.S. Supreme Court has observed in Qualitex Co., v. Jacobson Prods., 514 U.S. 159, 163-64 (1995):

> Trademark law, by preventing others from copying a source-identifying mark, reduces the customer's costs of shopping and making purchase decisions, for it quickly and easily assures a potential customer that this item-the item with this mark- is made by the same producer as other similarly marked items that he or she liked (or disliked) in the past. At the same time, the law helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product. The law thereby encourages the production of quality products, and simultaneously discourages those who hope to sell inferior products

Civ. No. 05-2259(PG)                                                      Page 8

> by capitalizing on a consumer's inability quickly to
> evaluate the quality of an item offered for sale.

Id. at 163-54.

The public and consumers have a right not to be deceived nor confused by defendant's acts of infringement. Unless restrained, defendant will continue to sell hats and other similar goods under the LACOSTE name and will cause consumers and the public to believe that they are dealing with the plaintiff when in fact they are not. This type of consumer confusion is, by its very nature, against the public interest. See also Lazoff Bros., Inc., 537 F. Supp. 587.

A preliminary injunction in this case would prevent consumer confusion, and would clearly serve the interests of consumers in general. See Public Service Co. of New Mexico v. Nexus Energy Software, Inc., 36 F. Supp. 2d 436, 439 (D. Mass. 1999) (granting preliminary injunction because eliminating confusion in the marketplace and providing protection for an established trade dress furthers the public interest.)

## CONCLUSION

Accordingly, the Court hereby **ORDERS** and thus **PRELIMINARILY ENJOINS Defendant Hector Mercer Guerrero d/b/a Eau de Par Fum** and any of his officers, directors, agents, servants, employees, attorneys, assigns, and any persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, pending the trial and the determination of this action, or until further notice of this Court from committing or perpetrating any of the following acts:

a)   Imitating, copying, or making unauthorized use of the LACOSTE Marks;

b)   importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of the LACOSTE Marks or any other indicia associated with plaintiff;

c)   using any simulation, reproduction, counterfeit, copy or colorable imitation of the LACOSTE Marks or any mark or trade dress confusingly similar thereto in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product in such fashion as to relate or connect, or tend

Civ. No. 05-2259(PG)                                                    Page 9

to relate or connect, such product in any way to plaintiff or to any goods sold, manufactured, sponsored or approved by or connected with plaintiff;

d)   using any false designation of origin or false description, or performing any act which is likely to lead members of the trade or public to believe that any product manufactured, distributed or sold by the defendant is in any manner associated or connected with plaintiff, or is sold, manufactured, licensed, sponsored, approved or authorized by plaintiff;

e)   transferring, consigning, selling, shipping or otherwise moving any goods, packaging or other materials in defendant's possession, custody or control bearing a design or mark substantially identical to plaintiff's LACOSTE Marks;

f)   engaging in any other activity constituting unfair competition with plaintiff, or constituting an infringement of plaintiff's LACOSTE Marks;

g)   disposing, destroying, altering, moving, removing, concealing, tampering with or in any manner secreting any business records (including computer records) of any kind, including invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, purchase, sale or offer for sale, or distribution of any merchandise bearing the LACOSTE Marks or trade dress; or

h)   instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (g) above.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, April 19, 2006

                                        S/JUAN M. PEREZ-GIMENEZ
                                        U. S. DISTRICT JUDGE